UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IN RE: ZIMMER M/L TAPER HIP          :
PROSTHESIS OR M/L TAPER              :    MDL NO. 2859
HIP PROSTHESIS WITH KINECTIV         :
TECHNOLOGY AND                       :    18-MD-2859 (PAC)
VERSYS FEMORAL HEAD PRODUCTS         :    18-MC-2859 (PAC)
LIABILITY LITIGATION                 :
                                     :    **ORDER NO. 58**
*This Document Relates to All Cases* :
------------------------------------------------------------x

     This Order resolves Defendant Zimmer's motion to strike several of Plaintiffs' rebuttal expert reports. Specifically, Zimmer moves to strike Dr. S. Michael Phillips' rebuttal expert report; Dr. Alissa J. Burge's rebuttal expert report; and paragraphs 16–17 of Dr. Richard Iorio's rebuttal expert report, on the ground that they do not rebut Zimmer's experts, and are thus improper. Mot. Strike 1, ECF No. 344.[1] Plaintiffs argue that (1) the reports do rebut Zimmer's experts, and are therefore proper, and (2) even if the reports are improper, the Court should not impose the "'drastic remedy' of preclusion." Opp'n 1, ECF No. 349 (quoting *Twelve Sixty LLC v. Extreme Music Libr. Ltd.*, No. 17-cv-1479, 2020 WL 2749708, at *4 (S.D.N.Y. May 26, 2020)).

     Having considered the Parties' arguments, the Court denies Zimmer's motion to strike.

## **BACKGROUND**

     Zimmer filed its motion to strike on March 30, 2021; at a conference the following day, the Court set a briefing schedule. Plaintiffs submitted their opposition brief on April 6, 2021, and Zimmer filed its reply three days later, on April 9.

---

[1] All ECF citations are to case No. 18-md-2859.

Zimmer moves to strike these expert rebuttal reports on the ground that they do not rebut Zimmer's experts, but instead offer new opinions and correct opinions the experts gave in their initial reports. Specifically, Zimmer argues that Dr. Phillips' rebuttal expert report "corrects or abandons opinions from Dr. Philips' initial report," and includes "entirely new opinions" along with a list of definitions not contained in his initial report. Mot. Strike 5–6. Dr. Iorio's initial expert report, says Zimmer, erroneously concluded that Ms. Nutting's MRI was not conducted with metal artifact reduction sequencing (MARS). *Id.* at 9. After Zimmer's experts' reports noted this error, Plaintiffs allegedly attempted to correct Dr. Iorio's error in the following way: Plaintiffs hired Dr. Burge, a radiologist, to analyze Ms. Nutting's MRI. Mot. Strike 9–10. She did, and issued her rebuttal report, containing the opinion "that the MRI shows some evidence of synovial thickening, which may or may not be evidence of ALTR [(adverse local tissue reaction)]." *Id.* at 10. Dr. Iorio then reviewed Dr. Burge's report, "parroted" her opinion, and corrected his earlier opinion, offered in his initial report, that the MRI was not conducted with MARS. *Id.* at 9–10. In Zimmer's view, the MRI is "the most important piece of objective evidence in the [*Nutting*] case," *id.* at 8, and Dr. Burge and Dr. Iorio should have disclosed these opinions earlier, so Zimmer could counter them with its own experts. *Id.* at 9, 12. Zimmer characterizes these rebuttal reports as "sandbagging," tricking Zimmer into thinking that it was dealing with a closed universe of opinions—namely, those disclosed in Plaintiffs' experts' initial reports—so that Zimmer's experts would respond only to those opinions, then offering brand new opinions in "rebuttal" that Zimmer never gets a chance to counter. *See id.* at 2, 12.

Plaintiffs, of course, object to that characterization, and to everything else in Zimmer's motion. According to Plaintiffs, each challenged report identifies flaws in Zimmer's experts' reports and calls into question their conclusions and expertise—in other words, the challenged

2

reports do exactly what rebuttal reports are supposed to do. Opp'n 1, 10. Rather than offering a new opinion, Dr. Phillips' opinion in his rebuttal report, agreeing with Zimmer's expert, Dr. Belsito, "that a type IV(a) immune response is the most common response in these types of cases and the histopathology of the bellwether plaintiffs support a type IV(a) immune response" (Opp'n Ex. K at 1, ECF No. 349–12), is consistent with both Dr. Phillips' initial report and the best understanding of the science. Opp'n 7–8. Dr. Phillips' rebuttal also says that "there is evidence, such as necrosis, which is compatible with a type IV(c) response," Opp'n Ex. K at 1, which is consistent with his initial opinion. Opp'n 7; *see* Opp'n Ex. G at p. 10, ¶ 3, ECF No. 349–7 ("The extent of necrosis seen . . . is typical of a severe combined foreign body reaction Type IVc immune reaction, and direct toxicity. . . . [T]he extensive necrosis and soft tissue reaction . . . was caused by the combined local foreign body reaction, Type IVc immune reaction, and direct ionic toxicity."); *id.* at p. 13, ¶ 3 (same); *id.* at p. 19, ¶ 3 (same). Plaintiffs contend that Zimmer treats "type IV(a) and type IV(c) reactions [as] mutually exclusive categories," when in reality those subtypes are interactive; thus, Dr. Phillips' rebuttal does not constitute a changed opinion with respect to those statements, but a consistent recognition of the interaction between subtypes. Opp'n 7–8. Further, Dr. Phillips included his "Essential Scientific Definitions" to challenge Zimmer's expert, Dr. Nelson, who allegedly used several terms interchangeably to mean the same thing, when in fact "there are critical differences between these concepts" and precision is important. Opp'n 8. Finally, say Plaintiffs, that Dr. Nelson's report persuaded "Dr. Phillips [to] withdr[a]w his opinions as to the nature of the specific immune response experienced by Ms. Nutting" is, if anything, helpful to Zimmer, and in any event Dr. Phillips maintained his opinion that Ms. Nutting's clinical history is compatible with ALTR. Opp'n 9 (internal quotations omitted).

Plaintiffs "did not initially disclose a radiologist," but after Zimmer disclosed its radiologist, Dr. Alice Ha, Plaintiffs hired Dr. Burge to rebut Dr. Ha's testimony. Opp'n 2. Plaintiffs represent that Dr. Ha, "relying on numerous articles" authored by Dr. Burge, opined that Ms. Nutting's MRI (1) "was of high quality" and (2) "showed 'no signs'" of ALTR. *Id.* (quoting Opp'n Ex. A at 8, ECF No. 349–1). Dr. Burge, in turn, "opined that Dr. Ha erred because [(1)] the MRI was of low quality; [and] [(2)] the MRI findings could not rule out ALTR." *Id.* at 3 (citing Opp'n Ex. C at 2, ECF No. 349–3). Dr. Iorio then reviewed Dr. Burge's report and repeated her findings in an effort to rebut Zimmer's experts' opinions on the same MRI; Plaintiffs argue that was permissible because Dr. Iorio may use a new methodology in a rebuttal report and even bring up evidence in rebuttal that he could have addressed in his initial report. Opp'n 3, 5.

Zimmer replies that if Dr. Phillips' rebuttal opinions really were consistent with his initial opinions, he would not need to specify that the rebuttal "opinions 'supersede' his prior ones or admit that he is withdrawing his prior opinions." Reply 4, ECF No. 352. Further, Zimmer contends that Plaintiffs are offering Dr. Burge's rebuttal report and paragraphs 16–17 of Dr. Iorio's rebuttal report "to correct errors and oversights" Dr. Iorio made in his initial report, Reply 1, and that all three experts' rebuttal reports improperly disclose affirmative evidence that the experts should have disclosed in their initial reports. Reply 2–4. Zimmer urges the Court to strike all three experts' reports, but if the Court decides not to strike the rebuttal reports of both Dr. Iorio and Dr. Burge, Zimmer asks the Court to "strike paragraphs 16 and 17 of Dr. Iorio's rebuttal report, and only allow Dr. Burge to offer opinions on the MARS MRI, and only in the rebuttal phase of Plaintiffs' case in *Nutting*." Reply 5.

4

## **DISCUSSION**

Federal Rule of Civil Procedure 26 allows rebuttal expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *Hart v. BHH, LLC*, No. 15cv4804, 2018 WL 3471813, at *9 (S.D.N.Y. July 19, 2018). While a rebuttal's scope "is limited to the same subject matter encompassed in the opposing party's expert report, . . . district courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *Allen v. Dairy Farmers of Am., Inc.*, No. 09-cv-230, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013)). Accordingly, a rebuttal expert need not use the same methodology as the affirmative expert to stay within the "same subject matter," *Roberts v. Los Alamos Nat'l Sec., LLC*, No. 11-CV-6206, 2016 WL 4442833, at *2 (W.D.N.Y. Aug. 19, 2016); instead, the "rebuttal expert is permitted to use new methodologies 'for the purpose of rebutting or critiquing the opinions of [the opposing party's] expert witness,'" *Scott*, 315 F.R.D. at 44 (quoting *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009)) (alteration in original).

"Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Id.* (quoting *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 CV 1851, 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008)). But "[a] rebuttal expert report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.'" *Ebbert v. Nassau Cnty.*, No. CV 05-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (citation omitted). Nor is a rebuttal report an opportunity to correct oversights in the party's case in chief. *Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253, 2009 WL 4907201, at *4 (S.D.N.Y. Dec. 18, 2009)

(citing *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)). The "court has wide discretion in determining whether to permit evidence on rebuttal." *Scott*, 315 F.R.D. at 44 (quoting *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992)).

If the challenged reports exceed the bounds of proper rebuttal, the court must decide whether to strike the reports. *See* Fed. R. Civ. P. 37(c)(1). "Precluding testimony of an expert, even when there has not been strict compliance with Rule 26, 'may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.'" *Rmed Intern., Inc. v. Sloan's Supermarkets, Inc.*, No. 94Civ.5587, 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002) (quoting *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 277 (S.D.N.Y.1998)); *see also In re Specialist & Other Vessel Owner Limitation Actions*, No. 16 Civ. 4643, 2020 WL 8665287, at *2 (S.D.N.Y. June 30, 2020) (noting that the "drastic remedy" of excluding expert testimony is "'inconsistent' with the judicial preference for 'determination of issues on the merits.'" (quotation omitted)).

> Courts in the Second Circuit consider four factors on a motion to preclude expert testimony: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Sci. Components*, 2008 WL 4911440, at *4 (citing *Softel, Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 961 (2d Cir. 1997)). These are known as the *Softel* factors. *See id.* Prejudice can be cured by allowing the movant to challenge the expert's testimony through depositions and *Daubert* motions. *See In re Kind LLC "Healthy & All Nat." Litig.*, — F.R.D. —

6

Nos. 15md2645, 15mc2645, 2021 WL 1132147, at *17 (S.D.N.Y. Mar. 24, 2021); *Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508, 510–511 (S.D.N.Y. 2019); *Rmed Intern.*, 2002 WL 31780188, at *4.

Here, most of the challenged testimony is within the scope of proper rebuttal. But even if all of it were improper, the Court would not award Zimmer the drastic remedy of preclusion, because the challenged reports do not meaningfully prejudice Zimmer.

## I. Dr. Phillips' Rebuttal Report

### a. Withdrawal of Opinions Regarding the Nature of Ms. Nutting's Specific Immune Response

Zimmer is correct that Dr. Phillips' withdrawal of his "opinions as to the nature of the specific immune response experienced by Ms. Nutting" fails to rebut Zimmer's expert, Dr. Nelson. Mot. Strike 4 (citing Mot. Strike Ex. A at 1–2, ECF No. 351–1). That withdrawal does not explain, repel, counteract, or disprove Dr. Nelson's opinion that without histopathology, Dr. Phillips had no basis to conclude that Ms. Nutting experienced a Type IV(c) immune response (Opp'n Ex. I Part 2, "Tamma Nutting," ECF No. 349–10), but instead fortifies Dr. Nelson's opinion, and thus falls outside the scope of proper rebuttal.

### b. Dr. Phillips' "Superseding" Opinions Regarding the Bellwether Plaintiffs' Immune Response Subtypes

Dr. Phillips' opinion stating that he agrees with Zimmer's expert, Dr. Belsito, "that a type IV(a) immune response is the most common response in these types of cases and the histopathology of the bellwether plaintiffs support a Type IV(a) immune response, although there is evidence, such as necrosis, which is compatible with a type IV(c) immune response as well," Mot. Strike 4–5 (quoting Mot. Strike Ex. A at 1–2 (emphasis omitted)) is proper rebuttal

7

testimony. Rather than leaving Dr. Belsito's opinions unaddressed, Dr. Phillips' opinions here attempt to counteract them by explaining that yes, the evidence is consistent with Dr. Belsito's conclusion that the bellwether plaintiffs experienced a type IV(a) immune response, *but the evidence is also consistent with Dr. Phillips' initial conclusion* that the bellwether plaintiffs suffered a type IV(c) immune response. Despite Dr. Phillips' addition of the sentence: "This opinion supersedes my prior opinions for the bellwether plaintiffs in my opening report on pages 10, 13, 16, and 19," Opp'n Ex. K at 1, the Court does not construe these rebuttal opinions as replacing Dr. Phillips' initial opinions.

### c. Dr. Phillips' Coronavirus Analogy

Dr. Phillips' comparison of the bellwether plaintiffs' immune responses to the immune responses of other patients to the coronavirus is not an impermissible new opinion. *See* Mot. Strike Ex. A at 4. Rather, Dr. Phillips rebuts Zimmer's experts' "impression that only individuals with a genetic predisposition will have a type IV immune response to metal debris" by asserting that immune responses occur along a continuum "that can be skewed by the nature and amount of stimulation" and analogizing the differing immune responses of individuals exposed to metal debris to the differing immune responses of individuals infected with the coronavirus to illustrate his point. *Id.* Because this analogy directly responds to Zimmer's experts and has the effect of disproving their opinions, it is proper rebuttal testimony.

### d. Dr. Phillips' Inclusion of "Essential Scientific Definitions"

Zimmer contends that if Dr. Phillips' 20 newly-submitted definitions were truly essential, he should have offered those definitions in his initial report. Mot. Strike 6. But an expert need not disclose in his initial report everything that might possibly be useful later. *See Sci. Components*, 2008 WL 4911440, at *3 n.2 (citing *Crowley*, 322 F. Supp. 2d at 551 ("[A] rule

[automatically excluding anything an expert could have included in his or her original report] would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material.")). It was perfectly acceptable for Dr. Phillips to use scientific terms in his initial report without defining them, and then define them in his rebuttal report to counteract what he perceives are Zimmer's experts' incorrect use of the terms. *See Sci. Components*, 2008 WL 4911440, at *3 n.2 (rejecting movant's argument that expert report was not appropriate rebuttal because the expert should have foreseen the need to discuss the distinction at issue in his initial report, because a reasonable failure to anticipate that the opponent "would, allegedly, confuse the two phenomena does not bar plaintiff from addressing that distinction in a rebuttal expert report"); *compare* Opp'n Ex. G *with* Mot. Strike Ex. A at 1–4 *and* Opp'n 8 (arguing that Dr. Phillips included his definitions in his rebuttal report to counteract Dr. Nelson's conflation of the terms "'aseptic lymphocyte-dominated vasculitis-associate lesion . . . ,' 'hypersensitivity,' and 'allergy'"). If Zimmer's experts improperly used multiple terms interchangeably, then by pointing out that error and offering discrete definitions to clarify each term, Dr. Phillips is "identif[ying] a flawed premise in an expert report," namely, the experts' reliance on incorrect definitions, "that casts doubt on both the report's conclusions and its author's expertise." *Sci. Components*, 2008 WL 4911440, at *2 ("[T]echnical information in the [rebuttal] Report that was not previously the subject of expert testimony in this litigation, and without which a non-scientist would be unable to evaluate [the rebuttal expert]'s criticism of [the opposing expert]'s report, is not out of place in a rebuttal report.").

9

## II. Dr. Burge's Rebuttal Report

Dr. Burge's report does not "attempt to add affirmative expert witness opinion to Plaintiff's case-in-chief under the guise of rebuttal," as Zimmer argues. Mot. Strike 8. Rather, Plaintiffs chose not to disclose an expert radiologist initially, evidently because Plaintiffs place less weight on Ms. Nutting's MRI than Zimmer does, but once Zimmer disclosed an expert radiologist (Dr. Ha), Plaintiffs decided to retain Dr. Burge to rebut Dr. Ha's report. Opp'n 2, 11–12. Dr. Ha included three articles authored by Dr. Burge (and others) in the "reliance literature" section of her report. Opp'n Ex. A at 10–11. Dr. Ha opined that (1) Ms. Nutting's MRI was "of good quality" (not "high quality," as Plaintiffs represent, Opp'n 2) and (2) showed no signs of ALTR, including no signs of synovial thickening. Opp'n Ex. A at 8, 10. Dr. Burge then reviewed the same MRI that Dr. Ha reviewed, concluded that the "majority of the images are not optimal" and found "mild synovial thickening," and thus "disagree[d] with the opinions that the MRI was of excellent quality and found no evidence of synovial thickening." Opp'n Ex. C at 1–2. This is proper rebuttal testimony because it directly rebuts Dr. Ha's opinions regarding Ms. Nutting's MRI, repelling those opinions by drawing the opposite conclusions. Although Plaintiffs could have retained Dr. Burge to prepare an initial report on the MRI, their decision not to do so does not render her rebuttal opinions impermissible.

## III. Paragraphs 16–17 of Dr. Iorio's Rebuttal Report

Zimmer is correct that paragraphs 16 and 17 of Dr. Iorio's rebuttal report mostly fail to rebut Zimmer's experts. Paragraph 16 describes how Dr. Iorio reviewed Dr. Burge's report and repeats Dr. Burge's findings. Opp'n Ex. D, ECF No. 349-4. While those findings do rebut Zimmer's experts, Dr. Iorio's repetition of them in his rebuttal report is really an attempt to bootstrap another expert's conclusions to fill a hole in Dr. Iorio's initial report. In paragraph 17,

10

instead of repelling or disproving Zimmer's experts, Dr. Iorio embraces their conclusion that Ms. Nutting's MRI "employed a MARS MRI technique." Opp'n Ex. D. This is an attempt to correct Dr. Iorio's initial report and thus falls outside the scope of proper rebuttal. In the rest of paragraph 17, Dr. Iorio explains that his review of Ms. Nutting's MRI study and the findings of Dr. Burge and Dr. Ha do not change his initial opinions, because "[t]he MRI does not rule in or rule out ALTR." *Id.* This is something of a rebuttal: to the extent that Dr. Ha's opinion that the MRI showed no signs of ALTR implies that Ms. Nutting did not in fact have ALTR, Dr. Iorio's statement that the MRI does not rule out ALTR tends to disprove or repel Dr. Ha's opinion, and so falls within the scope of rebuttal.

## IV. The Remedy

As explained, most of the testimony Zimmer challenges constitutes proper rebuttal testimony. But even if all the challenged testimony was improper, the Court would not strike the reports because Zimmer has not suffered any meaningful prejudice from them. "Precluding testimony is a drastic and disfavored measure." *Simo Holdings*, 354 F. Supp. 3d at 510. Thus, "[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988). On balance, the *Softel* factors weigh against precluding the expert reports at issue here.

First, Plaintiffs have not failed to comply with the discovery schedule; Plaintiffs served Zimmer each of the challenged reports on the deadline for submitting expert rebuttal reports, pursuant to the Revised Seventh Amended Schedule (Order No. 56, ECF No. 333). Opp'n 1. Zimmer's argument that the challenged reports are late because their opinions should have been included in the experts' initial reports (and thus served by the deadline for initial expert reports)

11

is unavailing. Those few statements that are not proper rebuttal are not untimely simply because they were not included in the initial reports. By pointing out their alleged mistakes, Zimmer's experts' reports prompted Dr. Phillips' opinion withdrawal and Dr. Iorio's opinion correction. These corrections aren't late, they're just improper. There is not a prescribed time in which to make these kinds of corrections.[2] The other challenged statements, as discussed, are direct rebuttal and thus timely because Plaintiffs served them by the rebuttal report deadline.

Second, the testimony at issue is important to the case. Dr. Phillips' opinion that immune responses occur along a continuum and interact with one another according to the nature and amount of metal in the body is "crucial" to rebut Zimmer's anticipated defense that the Plaintiffs' injuries were caused by allergic reactions or metal hypersensitivity. Opp'n 12. His definitions are similarly important, and so is explaining Zimmer's experts' conclusions regarding the subtype of the immune response Plaintiffs experienced, rather than allowing them to stand unchallenged. Similarly, because Zimmer places significant weight on Ms. Nutting's MRI, *id.* at 11–12; Mot. Strike 8 (referring to Ms. Nutting's MRI as "the most important piece of objective evidence in the case"), Dr. Burge's report is important rebuttal testimony. Dr. Iorio's repetition

---

[2] Contrast the duty to supplement, which arises under Federal Rule of Civil Procedure 26(e) and requires correction in a timely manner when the expert "subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate." *Simo Holdings*, 354 F. Supp. 3d at 510 (citation omitted). Here, Dr. Iorio knew about the MRI that caused him to correct his opinion when he issued his initial report (and there is no argument that it was unavailable to him). Indeed, he opined about it. *See* Opp'n Ex. E at ¶ 356, ECF No. 349-5. So, his correction is not an appropriate supplement, either. *See Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278–79 (S.D.N.Y. 2011). The same is true of Dr. Phillips' withdrawal of his opinion about the nature of Ms. Nutting's immune response, as Dr. Phillips "explicitly acknowledged in his opening report that there was no histological evidence in *Nutting*," Opp'n 9 (citation omitted), and later withdrew his opinion "[b]ecause there is no histopathology." Mot. Strike Ex. A at 1–2.

of her findings and attempt to correct his initial opinion, and Dr. Phillips' withdrawal of one of his initial opinions, by contrast, are not very important.

Third, Zimmer will not suffer meaningful prejudice from the Court allowing the challenged reports to stand. That Zimmer's experts did not get a sur-rebuttal does not constitute cognizable prejudice. Plaintiffs disclosed the rebuttal reports on March 23, 2021, a full month before the close of expert discovery on April 23, 2021 (Revised Seventh Am. Sched. 1), giving Zimmer plenty of time to prepare for its depositions of Dr. Phillips, Dr. Burge, and Dr. Iorio. In fact, Zimmer has "tentatively agreed" to depose Dr. Phillips on April 20, provided that the Court issues its ruling on Zimmer's motion to strike by April 16, 2021. Email from Kelly McNabb dated Apr. 6, 2021. The Court has moved quickly on Zimmer's motion to accommodate this schedule. At the depositions, Zimmer will have the opportunity to document Dr. Phillips' and Dr. Iorio's attempts to withdraw or correct their opinions, and to question them, respectively, on why Dr. Phillips did not discuss the probability that the bellwether plaintiffs experienced type IV(a) immune responses and why Dr. Iorio did not review Ms. Nutting's MRI study in their initial reports.

Further, it seems unlikely that Dr. Phillips' agreement with Zimmer's expert, which caused him to withdraw an opinion adverse to Zimmer's position, would prejudice Zimmer in any way. The same is true of Dr. Iorio's correction—it is a tacit admission of error, which is presumably the type of admission Zimmer will attempt to elicit from Dr. Iorio at his deposition and on cross examination. *See Sitts v. Dairy Farmers of Am., Inc.*, No. 2:16-cv-00287, 2020 WL 3467993, at *3 (D. Vt. June 24, 2020) ("The question of whether the error in [the expert]'s analysis could have been easily detected or is the result of inexcusable carelessness is fodder for cross-examination."). To the extent that Zimmer fears a disadvantage at trial if Dr. Iorio is

13

permitted to repeat Dr. Burge's findings, Zimmer can cure any prejudice by moving in limine to preclude any duplicative testimony. *Sci. Components*, 2008 WL 4911440, at *4.

Finally, the last *Softel* factor also weighs against precluding the testimony. "Both sides agree that a continuance is not necessary, and Zimmer has not asked for one." Opp'n 13. With this Order's swift issuance, the Parties can continue expert discovery without delay; there is no real threat of a continuance.

The Court notes that the Parties mention *Daubert*-style objections in their briefing, questioning the qualifications of each other's experts and the reliability of those experts' conclusions. *See* Mot. Strike 3, 5, 10–11; Opp'n 9–10. But those considerations are irrelevant to the inquiry here, which is whether the challenged reports are within the scope of rebuttal, and if not, whether the Court should strike them. *Roberts*, 2016 WL 4442833, at *2 ("Whether the methodology used in [the expert]'s report is reliable . . . is of no consequence here [in deciding whether the report exceeds the scope of expert rebuttal testimony]. . . . [C]ounsel is free to move to strike the report . . . pursuant to Rule 702 of the Federal Rules of Evidence."). Neither party has yet moved to exclude an expert under Rule 702. *Daubert* motions for the *Nutting* trial are due May 14, 2021. Revised Seventh Am. Sched. 1. The Court will consider *Daubert*-related arguments when those motions are fully briefed.

## **CONCLUSION**

Zimmer's motion to strike Dr. Phillips' rebuttal expert report, Dr. Burge's rebuttal expert report, and paragraphs 16–17 of Dr. Iorio's rebuttal expert report is denied. The Clerk of Court is directed to close the motion at 18-md-2859 ECF No. 344 and 18-mc-2859 ECF No. 152.

Dated: New York, New York
      April 14, 2021

SO ORDERED

*Paul A. Crotty*
HONORABLE PAUL A. CROTTY
United States District Judge