```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN RE:  ZIMMER M/L TAPER HIP              :
PROSTHESIS OR M/L TAPER                   :    MDL NO. 2859
HIP PROSTHESIS WITH KINECTIV              :
TECHNOLOGY AND                            :    18-MD-2859 (PAC)
VERSYS FEMORAL HEAD PRODUCTS              :    18-MC-2859 (PAC)
LIABILITY LITIGATION.                     :    19-CV-699 (PAC)
                                          :
TAMMA NUTTING,                            :    OPINION & ORDER
                    Plaintiff,            :
                                          :
          -against-                       :
                                          :
ZIMMER, INC. et al.,                      :
                                          :
                    Defendants.           :
                                          :
This Document Relates to All Cases        :
-------------------------------------------------------------x
```

Plaintiffs move for reconsideration of this Court's August 6, 2021 Order granting Defendant Zimmer's motions (1) to exclude the expert testimony of Ms. Mari Truman, and (2) for summary judgment on Plaintiff Tamma Nutting's claims for product design defect and failure to warn relating to her Zimmer hip device (a Zimmer 36mm +0 offset cobalt-chrome VerSys Femoral Head and a Zimmer 12/14 M/L Taper Kinectiv Stem and Neck ("Nutting's Device")). *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, Nos. 18-MD-2859, 18-MC-2859, 19-CV-699, 2021 WL 3475681, at *2 (S.D.N.Y. Aug. 6, 2021) ("August 6, 2021 Order").[1] In the alternative, Plaintiffs seek leave to disclose a new expert for the remaining three cases in the initial bellwether pool.  Pls.' Mot. Recons. 1, ECF No. 474;[2] Pls.' Mem. Supp. Mot. Recons. 23–25,

---

[1] The Court assumes the reader's familiarity with the August 6, 2021 Order.

[2] Unless otherwise indicated, all ECF citations are to the master docket, number 18-MD-2859.

1

ECF No. 475 ("Pls.' Mem."). Plaintiffs fail to satisfy the standards for reconsideration, and they have not shown good cause for modifying the scheduling order to allow Plaintiffs to disclose a new expert following their loss on Zimmer's *Daubert*[3] motion. Accordingly, Plaintiffs' motion is DENIED.

## DISCUSSION

I.    **Motion for Reconsideration**

    **A. Standard**

"[I]n the interests of finality and conservation of scarce judicial resources," the Court will grant reconsideration of its orders only in extraordinary circumstances. *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010). A party moving for reconsideration under Local Civil Rule 6.3 must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is not an opportunity to repeat arguments "already briefed, considered and decided," nor is it a vehicle for "plugging the gaps of a lost motion with additional matters." *Hinds Cnty.*, 700 F. Supp. 2d at 407.[4] Therefore, "[a] motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

---

[3] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

[4] Zimmer argues that Plaintiffs failed to comply with Local Civil Rule 6.3 by submitting an affidavit (and exhibits) without the Court directing them to, so "[t]he Court should strike and disregard these materials in their entirety." Zimmer's Opp'n to Mot. Recons. 2, ECF No. 483. Striking the materials is a moot issue, because Plaintiffs have not pointed the Court to anything in them that warrants reconsideration of the August 6, 2021 Order.

manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).

    **B. Application**

        **i.    Exclusion of Mari Truman's Proposed Expert Testimony**

Despite Plaintiffs' arguments to the contrary, Zimmer did not hoodwink the Court. Plaintiffs argue that the Court erred when it wrote that "Truman plans to testify that Nutting's Device is defective because Zimmer designed an intentional five-minute taper angle mismatch . . . which has a 'high likelihood of MACC [(machine-assisted crevice corrosion)],'"[5] because her *real* opinion is that "the hips are defective because 'Zimmer did not minimize the risk for fretting/corrosion.'" Pls.' Mem. 4 (citation omitted). Setting aside the fact that Plaintiffs themselves previously employed substantially the same description of Truman's opinion as the Court,[6] their present reframing of Truman's opinion creates nothing more than a distinction without a difference. With either framing of the opinion, the jury faces the same question: how much risk of corrosion is acceptable? As the August 6, 2021 Order discussed at length, Truman's main contention is that Zimmer failed to minimize the risk of corrosion by decreasing taper angle mismatch; her opinions on base lock and topography are dependent on the presence of mismatch. August 6, 2021 Order at *7–9. So, we are back to the same point: how much mismatch is too much? Truman concedes that all hip systems have some degree of mismatch, and that they are not all defective, so it is insufficient to say nothing more than that Zimmer needed to ensure it had "less" mismatch. *Id.* at *8–9. That conclusion is not adequately supported by reliable data, nor is it reached by a reliable methodology (as Truman did not explain her basis for crediting

---

[5] August 6, 2021 Order at *6 (citation omitted).

[6] *See* Zimmer's Opp'n to Mot. Recons. 4 (showing side-by-side comparisons).

certain data and discounting contrary data), and it does not help the jury answer the question of whether Nutting's Device had a design defect. *See id.* at *7–9. There is no clear error here.

Plaintiffs' remaining arguments are similarly without merit. They simply reiterate Plaintiffs' prior contentions that Truman's opinions are backed by sufficiently reliable data; that any issues with her proposed testimony go to weight rather than admissibility; and that her testimony would be helpful to the jury.[7] *See* Pls.' Mem. 6–18; Pls.' Reply Supp. Mot. Recons. 2–4, ECF No. 484 ("Pls.' Reply"). Such is not the stuff of successful reconsideration motions. And, as before, the problem with Plaintiffs' arguments about the feasibility of ceramic heads as an alternative design is that they are *Plaintiffs' arguments*, not Truman's opinions.[8] On reply, Plaintiffs argue that just because Truman did not discuss in her report other aspects of ceramic heads does not mean that she failed to consider them. Pls.' Reply 3–4. That may be so, but the

---

[7] Plaintiffs also argue that the Court should reconsider because "another court recently considered this Court's order, but found Ms. Truman's design opinion about a 'device's corrosion' that 'was based on medical records and deposition testimony' reliable." Pls.' Reply 3 (quoting *Oester v. Wright Med. Tech., Inc.*, No. CV-19-04763-PHX-SPL, 2021 WL 3742439, at *4 (D. Ariz. Aug. 24, 2021)). In fact, the *Oester* court listed this Court's August 6, 2021 Order among other cases that it determined were "either not factually aligned with the case here or are from outside the District of Arizona and Ninth Circuit." 2021 WL 3742439, at *4. The *Oester* court did not consider and reject this Court's reasoning or even its conclusions, and Plaintiffs have not given any indication that Truman's opinion in *Oester* was the same opinion she offers in this MDL. That another court in another case found a different Truman opinion based upon a different analysis able to withstand *Daubert* scrutiny does not mean that this Court erred by excluding Truman's opinions in this case.

[8] Plaintiffs misstate Idaho law on the use of alternative designs in design defect cases. Although a plaintiff need not prove the feasibility of an alternative design to succeed under a design defect theory (because there are other ways to prove a design defect), plaintiff *does* bear the burden of showing the design's feasibility if the plaintiff chooses to argue that the product is defective because a safer alternative design existed. Defendant bears the burden of showing "that no alternative design existed and that the product bestowed benefits that outweighed its risks" (Pls.' Mem. 12) only where the defendant asserts the affirmative defense of unavoidably safe product under Restatement (Second) of Torts § 402A, comment k. *See Adams v. United States*, 622 F. Supp. 2d 996, 1008–1009 (D. Idaho 2009). Zimmer has not asserted any such defense, and thus bears no burden on that issue.

4

Court (and ultimately the jury) cannot seriously be asked to speculate as to what Truman did or did not consider. We can assess only what she wrote and what she testified to, and Truman did not give any indication that she considered cost differences or risks other than corrosion from using ceramic instead of cobalt chromium heads in 2011. There is no "manifest injustice" (Pls.' Reply 2) in excluding Truman's testimony.

### ii. Grant of Summary Judgment

Plaintiffs also move the Court to reconsider its grant of summary judgment on Nutting's design defect and failure to warn claims. In regards to design defect, Plaintiffs argue that the Court labored under a misunderstanding: the conflation of "corrosion" and "clinically significant corrosion." Pls.' Mem. 19–20; Pls.' Reply 4–5. Plaintiffs contend that while surgeons knew of the risk of taper corrosion from metal hip implants in 2011, they did not know the risk that metal hip implants could cause *clinically significant* corrosion until later. But the timing of anyone's knowledge is immaterial; *when* Zimmer or surgeons became aware of a risk may be relevant to a failure to warn claim, but it has no bearing on the malfunction theory. *See Black v. DJO Glob., Inc.*, 488 P.3d 1283, 1288 (Idaho 2021).[9] And Plaintiffs' own submissions on this motion for reconsideration confirm that ALTR from corrosion (i.e., clinically significant corrosion) is a known risk of using metal hip implants. *See, e.g.*, Pls.' Reply 4 ("Indeed, clinically significant corrosion causing ALTR is one of the main reasons why orthopedic surgeons *now* use ceramic

---

[9] In quoting *Black*, Plaintiffs substitute "was known" for "is known," and substitute "total hip replacement surgery" for this Court's description of the product—metal hip implants. Pls.' Reply 4; August 6, 2021 Order at *11. These edits do not persuade the Court that it misinterpreted *Black*.

heads instead of metal heads . . . .").[10]  Accordingly, the Court will not reconsider its decision to grant Zimmer summary judgment on Nutting's design defect claim.

Nor will the Court reconsider its grant of summary judgment on Nutting's failure to warn claim.  Plaintiffs now concede that the learned intermediary doctrine applies, so that Zimmer's duty to warn ran to Nutting's surgeon, Dr. Meier, rather than to Nutting directly.  Pls.' Reply 5.  But Plaintiffs argue that "the Court overlooked a key factual question that remains for the jury," namely, "whether Zimmer's method of informing Dr. Meier of the risks was reasonable." *Id.*; *see also* Pls.' Mem. 20–22.  Plaintiffs admit that they already made this argument in opposition to Zimmer's motion for summary judgment.  Pls.' Reply 5 n.9.  The Court considered and rejected the argument.  August 6, 2021 Order at *12–13.  Thus, despite Plaintiffs' claim that the Court "overlooked" this "key factual question," Plaintiffs' "real objection is that the Court did not accept [their] argument." *Castillo v. Time Warner Cable of N.Y.C.*, No 09 Civ. 7644, 2011 WL 5084590, at *1 (S.D.N.Y. Oct. 24, 2011).  Plaintiffs contend that a jury could reasonably find that Zimmer should have warned Dr. Meier by methods other than the IFU, but they do not provide any case law in support of that argument, and they decline to engage with the cases the Court cited finding that where a surgeon fails to read the IFU, the plaintiff's failure to warn claim must fail.  Indeed, *Oester*, the case Plaintiffs cite in support of reconsidering the decision to exclude Truman, provides further support for the Court's failure to warn decision.  *See Oester*,

---

[10] Plaintiffs also argue that "a small amount of corrosion may have been expected given metal was being placed in the human body, but the resulting injury [(ALTR)] that Ms. Nutting suffered was not expected absent a defect attributed to the product."  Pls.' Mem. 20.  This is irreconcilable with Plaintiffs' simultaneous representation that "there is not a defined level at which MACC causes an adverse outcome" because "[i]mmune responses to metal are a 'bell-shaped curve.'"  Pls.' Mem. 5 (citation omitted).  By Plaintiffs' own argument, if corrosion is expected, then the risk of ALTR is expected.  And if MACC-induced ALTR is a known risk of using the product, then "Plaintiffs cannot use the malfunction theory to prove the existence of a design defect."  August 6, 2021 Order at *11 (citing *Black*, 488 P.3d at 1288).

2021 WL 3742439, at *6 (holding that although plaintiff's surgeon had received informational brochures and spoken with defendant's representatives, and despite the argument that "most doctors do not see medical device product boxes prior to surgery," the surgeon's failure to read the IFU was fatal to plaintiff's failure to warn claim).  The *Oester* court also remarked that "courts should not impose additional requirements on manufacturers than those already levied by the FDA," *id.* at *7, yet that is exactly what Plaintiffs seek—an opportunity to convince a jury that Zimmer should have issued warnings through other means in addition to the FDA-mandated IFUs.  The Court will not reconsider its decision to grant Zimmer summary judgment on Nutting's failure to warn claim.

II.     **Request for Leave to Disclose a New Expert**

   A.  **Standard**

A party who seeks to modify a scheduling order to disclose a new expert past the deadline for expert disclosures must demonstrate good cause and obtain the judge's consent. Fed. R. Civ. P. 16(b)(4); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("The burden of demonstrating good cause rests with the movant.").  The primary focus of this good cause inquiry is "upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment." *Ritchie*, 282 F.R.D. at 79.  Other factors include the movant's "diligence in seeking a modification to the schedule, the importance and relevance of the expert testimony to the case, whether the party seeking the additional discovery has had an adequate opportunity for discovery, prejudice to the party opposing the request, and imminence of trial." *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019).

### B. Application

The Court finds that Plaintiffs have not demonstrated good cause for modifying the scheduling order to allow Plaintiffs to disclose a new expert for the remaining three initial bellwether cases.

Plaintiffs argue that they were "diligent and complied with the Court's scheduling order by timely disclosing Ms. Truman on December 23, 2020," the deadline for disclosing experts in the initial bellwether trial pool. Pls.' Reply 8; *see* Seventh Am. Sched. 1, ECF No. 327. The reason why Plaintiffs did not timely disclose their proposed new expert is that they thought Truman's opinions could survive *Daubert* scrutiny, so they made a strategic decision to use her as their sole engineering expert for all four of the initial bellwether cases. *See* Pls.' Reply 8 n.13 ("Clearly the PEC would not have spent the time and money on an expert they did not think would survive *Daubert*."). Now that the Court has excluded Truman's testimony in the Nutting case, Plaintiffs have buyers' remorse, and argue that denying them leave to disclose a new expert would cause an "injustice to those three plaintiffs" in the remaining initial bellwether cases. *Id.* at 10. But there is no injustice in holding the bellwether plaintiffs to the consequences of their decision (through the PEC) to disclose only one engineering expert. *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 37 (1st Cir. 2012) ("A party who knowingly chooses to put all his eggs in one basket is hard-pressed to complain when the basket proves inadequate and the trial court refuses to allow him to substitute a new and previously undisclosed basket for it."); *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 387 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ("[N]o injustice will result from my ruling if there are no meritorious claims against these defendants.").

While Truman's testimony is important to Plaintiffs' case, each of the remaining initial bellwether plaintiffs allege many causes of action beyond the design defect and failure to warn

claims the Court considered in its August 6, 2021 Order. *See* 18-cv-10649, *Pride* Short Form Compl. 5–6, ECF No. 43; 19-cv-03504, *Goode* Short Form Compl. 5–6, ECF No. 1; 18-cv-10393, *Little* Short Form Compl. 5–6, ECF No. 38. They all will rely on substantive law from jurisdictions other than Idaho. Pls.' Reply 8. Accordingly, it is not clear to the Court that the remaining initial bellwether cases are completely lost absent a new expert. And even if *Pride*, *Goode*, and *Little* are decided on summary judgment, that judgment will still provide the parties with relevant information about the strengths and weaknesses of the remaining cases in the MDL.

      Several other good cause factors weigh against Plaintiffs, too. Plaintiffs do not argue that they had anything less than a full and fair opportunity to develop their expert evidence prior to the December 23, 2020 disclosure deadline. Further, granting Plaintiffs' request would work prejudice to Zimmer beyond the obvious effort that preparing to meet the new expert testimony would entail. Zimmer invested resources in challenging Truman's testimony with the justifiable understanding that Truman would be Plaintiffs' only engineering expert in all these cases. *See* Zimmer's Opp'n to Mot. Recons. 21; *Samaan*, 670 F.3d at 37. Zimmer's representation that allowing Plaintiffs to disclose a new expert at this stage "would likely mean a complete re-evaluation and re-do of all expert discovery in the remaining bellwether cases" is credible. Zimmer's Opp'n to Mot Recons. 22. In February 2021, the Court noted that it "will not give anyone two bites at the apple" when it comes to raising *Daubert* arguments in subsequent bellwether cases which the Court has already decided in prior bellwether cases. Order No. 54 at 4–5, ECF No. 328. Although Plaintiffs are "*not* requesting leave to disclose a new expert in *Nutting* for a do-over or to re-brief the same *Daubert* arguments made in *Nutting* in the

9

subsequent bellwether cases," they are effectively asking for more—permission to replace Truman altogether. Pls.' Reply 7. Granting that request would significantly prejudice Zimmer.

Finally, although Plaintiffs diligently brought this request 14 days after the Court's order excluding Truman, the motion was still made eight months after the expert disclosure deadline and several weeks after the close of all expert discovery for *Pride*. The Court has little doubt that one side or the other would soon request a continuance of the *Pride* trial if the Court allowed Plaintiffs to disclose a new expert. And although the Court has not yet assigned trial dates for *Goode* and *Little*, a delay in *Pride* will necessarily cause delays in the remaining two bellwether cases.

Plaintiffs contend that "it would be highly inefficient to resolve an MDL based on a 'miscalculation as to the persuasiveness of [initial expert's] testimony.'" Pls.' Mem. 23 (quoting *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, MDL No. 2342, No. 12-MD-2342, 2015 WL 115486, at *2 (E.D. Pa. Jan. 7, 2015)) (alteration in original). The *Zoloft* court allowed the plaintiffs' steering committee there to disclose a new expert after excluding their general causation experts' testimony. *In re Zoloft*, 2015 WL 115486, at *1–2. Remarking that "[t]his MDL Court must consider the broader ramifications of barring an attempt to present [the new expert]," the *Zoloft* court stated that it "fully appreciates Pfizer's argument that the PSC had every opportunity to select its expert witnesses and now seeks a '*Daubert* do-over' after an unfavorable outcome. Had this issue arisen outside of the MDL context, this argument may have carried the day." *Id.* at *2. But this Court does not think it appropriate to make the MDL nature of the matter a decisive factor. In fact, the case law Plaintiffs cite strongly suggests that it would be inappropriate to do so. *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020) (concluding that, in the context of a motion to amend the complaint governed by Rule

16(b), "the district court's mistake was to think it had authority to disregard the Rules' requirements in the Pharmacies' cases in favor of enhancing the efficiency of the MDL as a whole," because "the requirements of the Civil Rules in an MDL case . . . 'are the same as those for ordinary litigation on an ordinary docket'" (citation omitted)).

The Court finds that Plaintiffs have not demonstrated good cause to modify the scheduling order and allow them to disclose a new expert for the three remaining initial bellwether cases.

## CONCLUSION

The Court DENIES Plaintiffs' motion for reconsideration of the August 6, 2021 Order and DENIES Plaintiffs leave to disclose a new expert for the remaining three initial bellwether cases.

The Clerk of Court is directed to close the motions at 18-md-2859, ECF number 474; at 18-MC-2859, ECF number 193; at 19-cv-699, ECF number 125; and to close case number 19-cv-699.

Dated: New York, New York
      September 17, 2021

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge