UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
IN RE: ZIMMER M/L TAPER HIP            :
PROSTHESIS OR M/L TAPER                :   MDL No. 2859
HIP PROSTHESIS WITH KINECTIV           :
TECHNOLOGY AND VERSYS FEMORAL          :   18-MD-2859 (PAC)
HEAD PRODUCTS LIABILITY LITIGATION.    :   18-MC-2859 (PAC)
                                       :
*This Document Relates to:*            :   **OPINION & ORDER**
   *Pride v. Zimmer, Inc. et al.*, 18-cv-10649  :
   *Goode v. Zimmer, Inc. et al.*, 19-cv-03504  :
   *Little v. Zimmer, Inc. et al.*, 18-cv-10393 :
---------------------------------------------------------------x

Plaintiffs in this multidistrict litigation ("MDL") allege they were harmed by defective hip protheses made by Defendants Zimmer, Inc. and Zimmer US, Inc. (collectively "Zimmer").[1] The Court selected four initial bellwether cases for trial: *Nutting*, No. 19-cv-699, *Pride*, No. 18-cv-10649, *Goode*, No. 19-cv-3504, and *Little*, No. 18-cv-10393. In the first bellwether, *Nutting*, the Court granted summary judgment for Zimmer after excluding testimony by plaintiff's expert Mari Truman. The plaintiff in *Nutting* has appealed that bellwether case to the Second Circuit.

The Plaintiffs' Executive Committee ("the PEC") now moves to stay the remaining three bellwethers pending the *Nutting* appeal. The PEC argues the Second Circuit's decision in *Nutting* will heavily impact, if not resolve, the other three cases. Zimmer opposes the motion to stay, maintaining that appeals in individual bellwethers are always expected and that a stay would be inefficient. For the reasons that follow, the motion to stay *Pride*, *Goode*, and *Little* is **GRANTED**.

---

[1] Zimmer Biomet Holdings, Inc. is also a named defendant in many of the individual cases, but it was dismissed as a party in both *Nutting* and *Pride* so it is not discussed here. *See* ECF Nos. 413 & 533.

Unless otherwise indicated, all ECF citations are to the master MDL docket, No. 18-md-2859.

## BACKGROUND

The plaintiffs in this MDL underwent hip-replacement surgeries. They received Zimmer's VerSys femoral head combined with either the company's M/L Taper alone, or M/L Taper with Kinectiv Technology. Plaintiffs allege that when these products are combined, they are prone to micromotion between components, which causes metal release and corrosion. In turn, Plaintiffs allege, the metal release caused them tissue necrosis and pain (among other injuries), and necessitated revision surgeries to replace the products. The plaintiffs' cases against Zimmer were consolidated as an MDL in this Court.

MDL consolidation is designed to "promote the just and efficient" resolution of a large number of similar cases. 28 U.S.C. § 1407(a). With this central purpose in mind, bellwether trials are intended "to provide data points for settlement discussions with respect to the universe of cases" within the MDL. *In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14–MD–2543 (JMF), 14–MC–2543 (JMF), 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016).

Accordingly, the Court selected four bellwether cases for trial: *Nutting*, *Pride*, *Goode*, and *Little*. *See* Order No. 52 at 1, ECF No. 320. The Court found that these cases would "offer[] the best chance for the earliest resolution of a significant portion of the MDL cases" and "provide the Parties with useful data points" about the strength of their respective cases. *Id.* at 2. The Court refers to these four cases as the "initial" bellwethers.

### I.   Initial Bellwether # 1: *Nutting*

*Nutting* was the first bellwether scheduled for trial. After voluntarily dismissing many counts, the plaintiff in *Nutting* alleged three claims against Zimmer: negligence; strict products liability—defective design; and strict products liability—failure to warn. *See* ECF No. 466 ("Summary Judgment Order") 8; *reconsideration denied*, ECF No. 486. Nutting's hip-


replacement surgery occurred in Idaho, where she lived, and the parties agreed that Idaho law governed her three claims. *See* Summary Judgment Order at 8.

As part of the expert discovery in *Nutting*, the PEC disclosed a biomechanical engineering expert, Mari Truman. Truman wrote a report opining that the Zimmer hip-replacement products at issue were designed defectively. *See id.* at 11. However, because the Court found Truman's opinions suffered from "too large a gap between the data she relies upon and the conclusions she reaches," it excluded her opinion under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. *See id.* at 15.

With Truman's testimony gone, the Court granted summary judgment against Nutting. Without reliable expert testimony to prove Zimmer's products were designed defectively, Nutting could not prevail on her negligence and design-defect claims. *See id.* at 31. The Court also granted summary judgment against Nutting on her failure to warn claim, because it was undisputed that her surgeon did not read any product warnings before the surgery. *See id.* In other words, it did not matter how thorough Zimmer made its warnings, because the surgeon never read them in the first place—and Nutting trusted her surgeon to warn her of any risks. *See id.* at 25–26 (discussing Idaho's "learned intermediary" doctrine). Nutting's claims therefore failed for want of proximate cause. Nutting has appealed the Court's decision to the Second Circuit. *See* ECF No. 492.

Importantly, the PEC designated Truman as its design-defect expert for all four initial bellwethers—not just for Nutting's case. *See* ECF No. 486 ("Reconsideration Order") 8 (discussing how Truman was the sole design-defect expert "for all four of the initial bellwether cases"). Without Truman at its disposal, the PEC sought to disclose a replacement design-defect expert, but the Court denied the motion. *See id.* The Court noted the remaining initial bellwethers rely on laws from states other than Idaho. *See id.* at 9. Thus, it was "not clear" the other initial

bellwethers would be "completely lost absent a new expert." *Id.* The Court concluded that "even if *Pride*, *Goode*, and *Little* are decided on summary judgment, that judgment will still provide the parties with relevant information about the strengths and weaknesses of the remaining cases in the MDL." *Id.*

## II. Initial Bellwethers # 2–4: *Pride*, *Goode*, and *Little*

Although *Nutting* is on appeal, the remaining three initial bellwethers remain pending in this Court. The second bellwether is *Pride*. Following a stipulation of dismissal, the remaining claims in *Pride* are negligence; strict products liability—defective design; and strict products liability—failure to warn.[2] *Compare* ECF No. 533 (*Pride* stipulation of dismissal) *with* ECF No. 43, No. 18-cv-10649, at 5–6 (*Pride* short form complaint). This whittled set of claims in *Pride* is identical to the set of claims that the Court decided on summary judgment in *Nutting*.

The parties have also stipulated that the Court's order excluding Truman in *Nutting* applies to *Pride*. *See* ECF No. 531. The parties thus agree not to relitigate the exclusion of Truman from *Pride*, but they also agree the PEC has preserved its right to appeal that exclusion in *Pride*, too. *See id.*

As currently scheduled, the parties have a lot to do in *Pride* in the coming months. *See generally* Order No. 55, ECF No. 329. Summary judgment and *Daubert* motions are pending; motions in limine are due in less than two months. *See id.* Trial in *Pride* is slated to begin March 28, 2022. *See id.* Pre-trial schedules for *Goode* and *Little* have not been set.

---

[2] The Court treats the *Pride* plaintiffs' only other claims—for loss of consortium (Count XIII) and punitive damages—as derivative of the underlying tort claims. *See Brown v. Crown Equip. Corp.*, 960 A.2d 1188, 1194–95 (Me. 2008) (loss of consortium); *Wyman v. United States Surgical Corp.*, 456 F. Supp. 3d 224, 242 n. 11 (D. Me. 2020) (punitive damages).

4

The PEC now moves to stay *Pride*, *Goode*, and *Little* pending the Second Circuit's decision in *Nutting*. *See* ECF No. 496 (PEC's Motion); ECF No. 498 (PEC's Brief); *see also* ECF No. 502 (PEC's Reply Brief). Zimmer opposes the motion to stay. *See* ECF No. 501 (Zimmer's Opposition).

## DISCUSSION

### III. Applicable Law

District courts have discretion to stay a proceeding. *Fed. Ins. Co. v. Weinstein*, No. 18 Civ. 2526 (PAC), 2019 WL 1407455, at *2 (S.D.N.Y. Mar. 28, 2019). This discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The movant—here, the PEC—bears the burden of proving the need for a stay. *See Weinstein*, 2019 WL 1407455 at *2.

The parties disagree about what legal factors apply to stay a bellwether case in an MDL. Zimmer relies on the factors from *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), while the PEC contends the applicable factors come from *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). *Hilton*, of course, is binding on this Court in a way that *Kappel* is not, but each test applies in a different context. No court in this Circuit appears to have distinguished between *Hilton* and *Kappel*—or decided which should apply in the MDL context.[3] But upon review of the applications

---

[3] The few MDL courts outside this Circuit to have addressed the question have gone both ways. At least one district court applied the *Hilton* factors to deny a stay pending a bellwether appeal. *See In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:10 Civ. 01224, 2013 WL 4508339, at *1 (S.D.W. Va. Aug. 22, 2013). But a different MDL court applied an analysis closely tracking the *Kappel* factors. *See In re E. I. du Pont de Nemours & Co.*, MDL No. 2433, 2016 U.S. Dist. LEXIS 43337 (S.D. Ohio Mar. 29, 2016) (citation omitted) (considering "the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy").

5

of both tests, the Court concludes the MDL context in this case is closely analogous to the typical *Kappel* context.

The *Hilton* factors are used to stay a case pending an interlocutory appeal from that *same* case. *See, e.g., In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (applying *Hilton* factors to deny a stay pending an interlocutory appeal after the district court denied the appellant's motion for summary judgment).[4] The *Hilton* factors are relatively strict because interlocutory appeals are strongly disfavored—the goal is to keep a single case together and to save appellate review for after final judgment. *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–86 (2d Cir. 1996).

The more lenient *Kappel* factors, on the other hand, are used to stay a case pending an appeal in a *related*, but *separate* case. *See, e.g., Estate of Heiser v. Deutsche Bank Tr. Co. Americas*, No. 11 Civ. 1608 (AJN) (MHD), 2012 WL 5039065, at *2 (S.D.N.Y. Oct. 17, 2012) (collecting cases). The *Kappel* factors are often used, in a court's discretion, to conserve resources when the outcome of a parallel proceeding will simplify the legal or factual issues in the stayed case. *See, e.g., Fried v. Lehman Bros. Real Estate Assocs. III*, No. 11 Civ. 4141 (BSJ), 2012 WL 252139, at *5 (S.D.N.Y. Jan. 25, 2012) (applying *Kappel* factors to grant a stay pending the plaintiff's appeal to the Second Circuit in a related civil action); *see also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (discussing "parallel-proceeding abstention" as a basis for issuing a stay). Courts in this Circuit continue to rely on the *Kappel* factors. *See, e.g., GOJO Indus., Inc. v. Innovative Biodefense, Inc.*, 407 F. Supp. 3d 356, 361–62 (S.D.N.Y. 2019).

---

[4] The *Hilton* factors are also used to evaluate a request to stay enforcement of a court order—a context not presented here. *See Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020).

6

This latter situation under *Kappel* is presented here. The appeal in *Nutting* is not interlocutory—the typical setting for the *Hilton* factors—because it follows a final judgment on all the claims in that case. *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 416 (2015) (noting that "there is nothing 'interlocutory'" about an order dismissing an entire action). Nor does the PEC seek a stay in *Nutting* at all. Rather, the PEC seeks a stay in three related cases which were combined under the MDL statute for the "common questions of fact" they share with *Nutting*. 28 U.S.C § 1407. Although they are related, these bellwether cases are still distinct—with their own plaintiffs, their own facts, and their own "data points" for the overall MDL. *See Gelboim*, 574 U.S. at 413 ("Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities . . . ."). The Court will therefore apply the *Kappel* factors to this motion.[5]

Under *Kappel*, courts consider five factors when deciding whether to grant a stay in a related case or cases:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020) (quoting *Kappel*, 914 F. Supp. at 1058). No one factor is dispositive; they are balanced with the principal aim of avoiding unfair prejudice to either party. *See Readick v. Avis Budget Grp., Inc.*, No. 12 Civ. 3988 (PGG), 2014 WL 1683799, at *2 (S.D.N.Y. Apr. 28, 2014) (quotation omitted). But in general, "[a] stay may be appropriate in light of a concurrently pending federal action (either because the claim arises

---

[5] Consequently, the Court declines to consider the stricter *Hilton* factors that could weigh against granting a stay—including whether the PEC has made a strong showing that it is likely to succeed in the *Nutting* appeal, and whether it would be "irreparably" injured without a stay. *See Hilton*, 481 U.S. at 776.

from the same nucleus of facts or because the pending action would resolve a controlling point of law)." *Id.* (quotation omitted).

## IV. Staying *Pride, Goode, and Little* is Warranted

The *Kappel* factors weigh in favor of staying the remaining initial bellwethers. Courts regularly stay cases where an appeal in a related case will resolve (or at least greatly simplify) the issues in the stayed case. *See, e.g., Loftus*, 464 F. Supp. 3d at 527 ("Even a decision from the Supreme Court that would not be dispositive of issues in this case could contain guidance that would allow this litigation to proceed on a reasonable and efficient basis."); *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015) ("The final outcome of [appeal in a related case] will likely streamline issues for dispositive motions and bellwether trials in this case. The risk of duplicative litigation is too great for this Court to ignore.") (citations omitted); *Fried*, 2012 WL 252139 at *5 ("There is significant overlap between this lawsuit and the lawsuit on appeal, both legally and factually, which is a solid ground upon which to issue a stay.").

Here, there is no doubt the Second Circuit's decision about whether the Court can exclude Truman "will be of substantial importance" to the other initial bellwethers for which she was also designated as an expert. *McCracken v. Verisma Sys., Inc.*, No. 6:14 Civ. 06248 (MAT), 2018 WL 4233703, at *4 (W.D.N.Y. Sept. 6, 2018). The Court granted summary judgment in the first bellwether primarily because Truman was excluded. *See* Summary Judgment Order at 22 ("Without Truman's testimony, Nutting cannot identify a specific defect in her [hip implant], and because corrosion is a known risk of using metal hip implants, Nutting cannot proceed under the malfunction theory of defect."). Truman's expert testimony undoubtedly serves as one of the "key

8

issues" of the PEC's negligence and strict products liability theories,[6] and that testimony will depend on the "clarification" the Second Circuit provides in the *Nutting* appeal. *McCracken*, 2018 WL 4233703 at *4.

To be sure, the Court acknowledged previously that it was "not clear" the remaining initial bellwethers would be "completely lost" without a design-defect expert. Reconsideration Order at 9. But it now seems clear: Having considered the parties briefing both on this motion to stay and on the summary judgment motion in *Pride*, the Court concludes the initial bellwethers will all depend largely on the admissibility of a design defect expert. The parties agree on this front. *See* PEC's Brief at 6; Zimmer's Opposition at 6 (acknowledging "both parties agree" the outcome in the remaining initial bellwethers "turns entirely on the Second Circuit"). Indeed, Zimmer contends it should be granted summary judgment in *Pride* in light of Truman's absence—regardless of any differences between Idaho law in *Nutting* and Maine law in *Pride*. *See* ECF No. 523 (Zimmer's Motion for Summary Judgment in *Pride*) 1, 7.[7]

It makes little sense, then, to expend the parties' and the Courts' resources re-hashing the design-defect issue in three more bellwethers when the pending Second Circuit's opinion could moot that issue. *See Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) ("[A] court may also properly exercise its staying power when a higher court is close to settling an important

---

[6] It makes sense to stay the "failure to warn" claims for the same reasons. Zimmer would have nothing to "warn" about if its products were reasonably safe. *See* REST. (3D) TORTS: PROD. LIAB. § 2(c). Consequently, the plaintiffs' failure to warn claims thus turn on their ability to prove (with an expert's help) that Zimmer's products are defectively designed.

[7] Only one of the initial bellwethers will apply a different state law. Like in *Pride*, the third initial bellwether involves a Maine-domiciled plaintiff and a Maine-based hip surgery. *See* ECF No. 1, No. 19-cv-3504 (*Goode* short form complaint). The fourth and final initial bellwether involves a Maryland-domiciled plaintiff and a Maryland-based surgery. *See* ECF No. 38, No. 18-cv-10393 (*Little* short form complaint). The parties have not indicated whether Maryland products liability law is substantially different from Idaho or Maine law.

9

issue of law bearing on the action."). The public, too, has an interest in judicial economy—one that "weigh[s] against the investment of court resources that may prove to have been unnecessary." *Readick*, 2014 WL 1683799 at *6 (quotation omitted). It is efficient for everyone involved to stay the remaining initial bellwethers.

Further, Zimmer has not identified any specific prejudice if these bellwether cases against it are stayed—it does not claim evidence will go stale pending the appeal, or that any party would incur additional costs while waiting for the Second Circuit to make its decision. *See Fried*, 2012 WL 252139 at *5. It can only claim prejudice from the "delay inherent in all stays." *McCracken*, 2018 WL 4233703 at *3.

Zimmer is correct, however, that delay takes on a special significance in the MDL context. MDLs allow many plaintiffs to gauge the strength of their own cases based on outcomes from a few bellwether trials, and a defendant like Zimmer can likewise resolve many suits against it. Accordingly, courts generally refuse to stay an entire MDL merely because one bellwether is on appeal. *See In re DePuy Orthopaedics*, No. MDL 3:11-MD-2244-K, 2016 WL 10707019, at *5 (N.D. Tex. July 5, 2016); *In re E. I. du Pont de Nemours & Co*, MDL No. 2433, 2016 U.S. Dist. LEXIS 43337, at *1202 (S.D. Ohio Mar. 29, 2016); *In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:10-CV-01224, 2013 WL 4508339, at *1 (S.D.W. Va. Aug. 22, 2013).

Nevertheless, staying the initial bellwethers will not grind this entire MDL to a halt. The Court intends to select a second round of bellwether cases promptly. And the *Nutting* appeal will not control the second round of bellwethers because the PEC is free to disclose a new design-defect expert for new cases. The Court's order only excluded Truman, who was only disclosed for the initial bellwethers. Likewise, the Court prevented the PEC from disclosing a new expert only in those cases. *See* Reconsideration Order at 8.

Commencing a second round of bellwethers should be relatively straightforward. Expert discovery—the brunt of discovery in any MDL where similar factual allegations support each case—was already completed in the initial bellwethers and can easily be applied to a second round of cases. Although the process of selecting new bellwethers can take time, new bellwethers will only require case-specific fact discovery and discovery regarding a new design-defect expert (assuming the PEC discloses one) before those bellwethers would be ready for trial.

Zimmer contends that simply throwing up our hands and moving to a second round of bellwethers would be premature. Zimmer warns, for example, that if the Second Circuit reverses in *Nutting* (which would lift the stay on the initial bellwethers), this Court might have to juggle the initial and second round of bellwethers all at once. But the same would be true if Zimmer got its way: Entering consent judgments in the remaining initial bellwethers would remove those cases from the Court's docket and leave it free to begin selecting a second round of bellwethers. Ditto if the Court enters summary judgment for Zimmer in the remaining initial bellwethers—which Zimmer contends is required in *Pride* given the absence of a design-defect expert. *See* discussion *supra* at 9. In either scenario envisioned by Zimmer—consent judgments or summary judgments—a reversal in *Nutting* would nullify those judgments and revive the initial bellwethers in this Court. Thus, no matter which path it takes, this MDL appears destined to move onto a second set of bellwethers during the *Nutting* appeal.

The parties real dispute seems to be about the (temporary) outcome of *Pride*, *Goode*, and *Little*: Stay the cases (preserving the status quo without a winner) or enter judgments (chalking up nominal wins for Zimmer). Zimmer argues consent judgments in *Pride*, *Goode*, and *Little* would prevent the PEC from unfairly changing course and arguing that those cases are not controlled by the outcome in *Nutting*. *See* Zimmer's Opposition at 7 fn.2. But the parties have already stipulated

11

that *Nutting* affects *Pride*, at least somewhat, and the Court can dispose of that argument if the PEC raises it after the *Nutting* appeal. In any event, this Court lacks the power to force the individual plaintiffs to enter consent judgments. *See Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986). Instead, the Court exercises its discretion to stay the remaining initial bellwethers pending in the *Nutting* appeal, in the interest of efficiently resolving a major issue at the crux of the MDL.

## CONCLUSION

The Court **GRANTS** Plaintiffs' motion to stay the remaining initial bellwether cases. The cases *Pride*, No. 18-cv-10649, *Goode*, No. 19-cv-3504, and *Little*, No. 18-cv-10393 are **STAYED** pending the resolution of the appeal in *Nutting*, No. 19-cv-699. Zimmer and the PEC shall meet and confer before jointly submitting a proposed briefing schedule for a selecting a second round of four bellwether cases in this MDL. That schedule shall be filed by January 3, 2022.

The Clerk of Court is directed to close the motion at 18-md-2859, ECF number 496.

Dated: New York, New York
December 16, 2021

SO ORDERED

*Paul A. Crotty*
HONORABLE PAUL A. CROTTY
United States District Judge