UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IN RE:  ZIMMER M/L TAPER HIP　　　　　:
PROSTHESIS OR M/L TAPER　　　　　　　:　　　MDL NO. 2859
HIP PROSTHESIS WITH KINECTIV　　　　:
TECHNOLOGY AND　　　　　　　　　　　:
VERSYS FEMORAL HEAD PRODUCTS　　　:　　　18-md-2859-PAC
LIABILITY LITIGATION　　　　　　　　　:　　　18-mc-2859-PAC
　　　　　　　　　　　　　　　　　　　　:
*This Document Relates to All Cases*　　:　　　**ORDER NO. 64**
------------------------------------------------------------x

## ORDER GOVERNING THE SECOND BELLWETHER SELECTION AND PROCESS

This order sets forth the Court's instructions regarding the second bellwether selection process in MDL No. 2859.

## I.　BACKGROUND

1.　In October 2018, the United States Judicial Panel on Multidistrict Litigation ("JPML") began transferring actions for personal injury and wrongful death claims against the Zimmer Defendants[1] ("Zimmer") for alleged defect in the Zimmer M/L Taper Hip Prosthesis ("M/L Taper") or the M/L Taper Hip Prosthesis with Kinectiv Technology ("Kinectiv"), when either femoral stem is paired with the VerSys Hip System Femoral Head ("VerSys femoral head"). At the conclusion of these pretrial proceedings, the plaintiffs have a right to have their cases remanded back to the originating/transferor courts across the country. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (noting that 28 U.S.C. § 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, [] pretrial proceedings have run their course"). The originating courts will then face the prospect of trying (or settling) these cases involving similar claims.

---

[1] Zimmer, Inc.; Zimmer US, Inc.; and Zimmer Biomet Holdings, Inc.

2.      Before reaching that point in this proceeding, the Court is tasked with identifying and implementing processes and tools to manage the litigation in an effective, efficient, and just manner. Bellwether or test trials can be important case management tools in a multidistrict proceeding involving numerous individual claims. Indeed, this Court has held that "bellwether trial[s] [] allow[] a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-1898, MDL No. 1358 (SAS), 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007); *see also, e.g., In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.").

3.      The purpose of a "bellwether" or "representative" case is to "enhance and accelerate both the MDL process itself and the global resolutions that often emerge from that process." Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2325 (2008) (18-md-2859 Dkt. 13-4). In other words, bellwether cases should be "representative" of the overarching issues within the overall MDL to aid the development of the parties' disputes and put a value on the litigation. *See In Re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. 09-2967, 2009 WL 3418128, at *3 (E.D. La. Oct. 14, 2009), *aff'd sub nom. In re FEMA Trailer Formaldahyde Prod. Liab. Litig.*, 628 F.3d 157 (5th Cir. 2010) (finding one of "the principal goals of the bellwether process" is to select a plaintiff or plaintiffs "who can truly be representative of the whole mass of plaintiffs in the MDL"). Thus, bellwether cases are those "that can illustrate and inform the parties and the Court of important issues in the litigation, which necessarily means they are of value to individual Plaintiffs and the case as a whole for a variety of reasons." *In re:*

*Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWFAJB, 2006 WL 409200, at *1 (D. Minn. Jan. 31, 2006).[2] "A bellwether trial is most effective when it can accurately inform future trends and effectuate an actual culmination to the litigation." Fallon, *supra* at 2344. Bellwether trials also provide the parties with an opportunity to develop litigation frameworks that can be used in cases remanded to the originating courts.

4.    In Order No. 19 (ECF No. 102), this Court established the baseline process for selecting bellwether cases in this MDL. The Court eventually selected four bellwether cases from a (First) Bellwether Selection Pool: (1) *Nutting*, 19-cv-699; (2) *Pride*, 18-cv-10649; (3) *Goode*, 19-cv-03504; and (4) *Little*, 18-cv-10393. The Court granted summary judgment for Zimmer in *Nutting*, which the plaintiff appealed. *See* ECF No. 466, *reconsideration denied*, ECF No. 486. The Court then stayed *Pride*, *Goode*, and *Little* pending that appeal. ECF No. 557.

5.    In its opinion granting that stay, the Court stated it "intend[ed] to select a second round of bellwether cases promptly." *Id.* at 10. This order begins that selection process.

## II.    IDENTIFICATION OF THE SECOND BELLWETHER SELECTION POOL

6.    The Second Bellwether Selection Pool shall be divided into two categories depending on the product at issue.

> Category One: Plaintiffs implanted with a Zimmer M/L Taper with Kinectiv Technology femoral stem and VerSys femoral head.

> Category Two: Plaintiffs implanted with a Zimmer M/L Taper femoral stem and VerSys femoral head.

---

[2] *See also* Manual for Complex Litigation (Fourth) § 22.315 (2004) ("Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis. *The more representative the test cases, the more reliable the information about similar cases will be.*" (emphasis added)).

7.     To be eligible for inclusion in the Second Bellwether Selection Pool, a claim must satisfy the following criteria:

a.     Plaintiff must have undergone a revision surgery.

b.     Plaintiff's complaint must have been filed as of September 17, 2021.  The parties will work together to ensure that all Plaintiff Preliminary Disclosures and Plaintiff Fact Sheets have been submitted to the Zimmer Defendants prior to random selection.

c.     Bilateral revision surgeries: Plaintiffs who underwent bilateral revision surgeries are eligible for the Bellwether Trial Pool.

## III.     SELECTION OF THE SECOND BELLWETHER TRIAL CASES

8.     As noted above, for this bellwether plan to succeed, the cases selected as trial candidates must constitute a representative sampling of cases in this proceeding. To that end, the parties are reminded, as they were in Order No. 19, that they shall exercise good faith throughout the bellwether process to avoid the selection of cases presenting unique or idiosyncratic facts or law that would render the results of these cases unenlightening.

### A.     METHOD FOR BELLWETHER TRIAL CASE SELECTION.

9.     Allowing the parties to each select their own cases at the outset of the bellwether process will result in bellwether trials in only the cases that the parties find most favorable to their respective sides, rather than cases of average and representative merit (see the Court's initial experience in *In re NexGen Knee Implant Prods. Liab. Litig.*, MDL No. 2272).  Therefore, the Court will instead use a bellwether selection process involving: (1) random selection of an initial pool of potential cases; (2) strikes by the parties to remove the most unrepresentative cases from the initial pool; and (3) ultimately, Court selection of the bellwethers from the remaining cases. At a status conference on February 28, 2022 at 4:00pm ET, the Court will use a random selection process to identify 8 cases from Category One and 8 cases from Category Two.  By 5:00 pm ET

on a date 14 days after the status conference at which random selection occurs, each party will file a Notice of Bellwether Strikes in which they strike 2 cases from Category One and 2 cases from Category Two. Then, on a date 10 days after the parties exercise their strikes, the parties will file briefs with the Court on the propriety of the remaining 8 cases (assuming the parties do not strike the same cases) for bellwether trial. Based on the parties' briefing, the Court will select 2 cases from each Category for final workup and trial.

### B. *LEXECON* WAIVER.

10.     Any Plaintiff who wishes to assert a *Lexecon* objection to his/her case being tried by the Court must file an objection in writing by February 22, 2022. If no objection is filed by the deadline, a Plaintiff will be deemed to have waived any objection to having his or her case tried in the MDL district.

11.     *Lexecon* objections other than those for claims tried in the Court under the bellwether trial plan are preserved. Thus, if a claim in the Bellwether Trial Pool is not selected for trial, then the Court will restore the rights of the Plaintiff and the Zimmer Defendants in that claim to object to venue and jurisdiction in the Southern District of New York for purposes of trial.

### C.     AMENDED COMPLAINTS AND ANSWERS.

12.     Consistent with MDL Order No. 9, Section II.7, a Plaintiff selected for the Second Bellwether Trial Pool will have **thirty (30) days** after notice of selection for workup and trial to amend their complaint, if necessary, without leave of the Court. Similarly, consistent with MDL Order No. 9, Section III.3, without leave of Court, Zimmer Defendants will have **sixty (60)** days after selection of the Second Bellwether Trial Pool to file a Motion to Dismiss in any individual action selected as a Second Bellwether Trial Case, or to file case-specific, amended Answers to add affirmative defenses and to respond to new allegations contained in any amended Complaint filed by a Plaintiff.

### D.     SETTLEMENT OR DISMISSAL OF BELLWETHER TRIAL POOL CASES.

13.     If a bellwether trial case is settled or dismissed prior to trial, the parties shall meet and confer to discuss whether the case should be replaced and, if so, how. The parties should include that issue on their proposed agenda for a status conference at the appropriate time.

### E.     CASE-SPECIFIC FACT DISCOVERY.

14.     Case-specific fact discovery of Plaintiffs selected as a Second Bellwether Trial Case will commence on the date the Court selects the four cases that will be worked up for trial. Among other things, case-specific fact discovery may consist of (a) a deposition of Plaintiff; (b) depositions of treating physicians or medical providers; (c) depositions of Zimmer sales representatives, sales managers, and/or regional/district managers; (d) depositions of fact witnesses to the incident that is the subject of the claim. Case-specific fact discovery of Plaintiffs in the Second Bellwether Trial Pool shall conclude no later than **120 days** after the date the Court selects the four cases.

## IV.    EXPERT DISCOVERY AND OTHER PRETRIAL SCHEDULING FOR SECOND BELLWETHER TRIAL CASES

15.     Expert discovery including the applicability of general expert opinions disclosed in the Second Bellwether Trial Cases shall proceed under a schedule to be proposed by the parties at a later date and following random selection of the Second Bellwether Trial Pool.

## V.     FUTURE TRIAL SCHEDULING AND STATE COURT PROCEEDINGS IN A RELATED OR COORDINATED ACTION

16.     The Court is aware that there are several cases pending in state courts that involve MDL Products. If a state court in a Related or Coordinated Action schedules a trial to commence in 2022 or 2023, the parties shall immediately notify the Court. The Court will then coordinate

with the applicable state courts and, if warranted, work with the state court as necessary to coordinate trial dates.

## VI.  DEADLINES FOR THE SECOND BELLWETHER POOL SELECTION AND PROCESS

17.    The Court adopts the following deadlines for the Second Bellwether Pool Selection and Process:

| Event | Date |
|---|---|
| Deadline for parties to file *Lexecon* objections: | February 22, 2022 |
| Deadline for parties to submit Second Bellwether Pool eligibility list to the Court consisting of all cases that waive *Lexecon* and satisfy the inclusion criteria set forth in ¶ 8 of this Order: | February 25, 2022 |
| Court to randomly select 16 cases (8 from Category One and 8 from Category Two) for inclusion in the Second Bellwether Pool at status conference: | February 28, 2022 at 4:00pm ET |
| Deadline for parties to file Notices of Bellwether Strikes: | March 14, 2022 by 5:00pm ET |
| Deadline for parties to file briefs on which four cases should be selected by the Court as the Second Bellwether cases: | March 24, 2022 |
| Commencement of case-specific fact discovery for the Second Bellwether cases: | The date the four Second Bellwether cases are selected by the Court |
| Close of case-specific fact discovery for the Second Bellwether cases and deadline for the parties to submit letter briefs proposing the order of those cases: | 120 days after the second bellwether trial pool cases are selected by the Court |

Dated: New York, New York
        January 21, 2022

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

7